IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD NELSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:22-CV-034-RP |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| TRANSPORTATION, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Texas Department of Transportation's ("TxDOT") Motion for Summary Judgment. (Dkt. 17). Plaintiff Richard Nelson ("Nelson") filed a response, (Dkt. 20), and TxDOT filed a reply, (Dkt. 21). Having considered the parties' submissions, the record, and the applicable law, the Court will grant the motion for summary judgment.

### I. BACKGROUND

Nelson worked as a Toll Operations Division Director for TxDOT from May 2015 to November 30, 2020, when TxDOT terminated his employment. At the time of his termination, Nelson was 67 years old and within one year of being eligible for retirement from TxDOT.

On October 8, 2020, the TxDOT Compliance Division received an anonymous complaint against Nelson, alleging that he had made inappropriate comments about women in a meeting with staff and a vendor, such as "she has a nice ass." (Incident Report '029, Dkt. 17-1, at 70–71). The complainant also alleged Nelson created a hostile work environment, favored certain employees, told a female employee, "you have to hire a male next time," made comments based on race in a staff meeting about an employee's last name (Dargahi), and told employees on an evaluation team to

1

hire a certain vendor because it would further his own career after retirement. (*Id.* at 70). Nelson denies these allegations. (Resp., Dkt. 20, at 8).

On October 12, 2020, a second anonymous complaint was filed, alleging Nelson acts in a misogynistic and racist manner towards employees. (Incident Report '035, Dkt. 17-1, at 72–74). Per the allegation, Nelson asked employees to kiss people for business purposes, called out minorities in meetings, primarily promoted and hired white males, and treated them differently from other employees. (*Id.* at 72). The complaint further alleged staff were afraid to report Nelson's behavior due to a fear of repercussions. The complaint also included a screenshot of a social media post from Nelson calling Black Lives Matter and the Biden 2020 campaign "shit." (*Id.* at 74).

On October 12, 2020, Brian Ragland ("Ragland"), Nelson's supervisor, discussed the anonymous complaint with Nelson. (Nelson Depo., Dkt. 17-1, at 163–64). Shortly after this meeting, Nelson sent emails to TxDOT's HR department concerning alleged performance issues of three TxDOT Section Directors: Linda Sexton ("Sexton"), Brian Smallwood ("Smallwood"), and Payman Dargahi ("Dargahi"). (HR Emails, Dkt. 17-1, at 80–82). In a follow-up call with HR, Nelson told HR that he believed all three of these employees should be terminated. (Nelson Depo., Dkt. 17-1, at 137–39).

On October 12, 2020, Homer Diaz ('Diaz"), Director of TxDOT's Ethics and Employee Conduct Section, began an investigation regarding the October 8 complaint. On October 13, 2020, the second complaint was added to the investigation. On November 2, 2020, Diaz issued a report summarizing the findings, which included information gathered from interviews with 16 TxDOT employees. ('062 Report, Dkt. 17-1, at 90). The report stated that several witnesses corroborated the alleged comments concerning women and Dargahi's name, and that the information supported the allegation that Nelson acted inconsistent with TxDOT's workplace harassment policies. (*Id.* at 94)

TxDOT alleges that on October 26, 2020, while the investigation was pending, Nelson issued disciplinary actions (12-month probation) to Sexton, Smallwood, and Dargahi. ('065–67 Report, Dkt. 17-1, at 101). Nelson disputes that he was the one to issue these disciplinary actions, or that he knew of their involvement with the anonymous complaints. (Resp. Dkt. 20, at 2; Nelson Decl., Dkt. 20-1, at 1–2). That same day, each of these employees filed complaints of retaliation by Nelson with HR, alleging that their disciplinary actions were related to their participation in the ongoing investigation. (Retal. Compls., Dkt. 17-1, at 95–98). Diaz conducted a combined investigation of the retaliation complaints. ('065–67 Report, Dkt. 17-1, at 99). On November 20, 2020, Diaz issued a report summarizing the findings related to the retaliation claims, which included information gathered from interviews with 15 TxDOT employees. ('065–67 Report, Dkt. 17-1, at 99). The report determined that Nelson had likely engaged in conduct inconsistent with TxDOT's retaliation policy. (*Id.* at 102).

On November 29, 2020, Ragland informed Nelson that his position would be terminated effective November 30, 2020, because Nelson had engaged in conduct inconsistent with TxDOT's policies on retaliation and workplace harassment. (Termination Email, Dkt. 17-1, at 65). TxDOT alleges Ragland's decision was based on Diaz's reports. (*Id.*; Ragland Depo., Dkt. 17-1, at 218–19).

Nelson filed his complaint in the 98th District Court in Travis County, Texas, on December 15, 2021. (Compl., Dkt. 1-2). In his complaint, Nelson brings claims of age discrimination against TxDOT under the Texas Labor Code and the Age Discrimination in Employment Act ("ADEA"). (Dkt. 1-2, at 4–5).

The case was removed to this Court on January 12, 2022. (Notice, Dkt. 1). TxDOT filed this motion for summary judgment on January 27, 2023. (Dkt. 17). Nelson filed a response, (Dkt. 20), and TxDOT filed a reply, (Dkt. 21).

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a

genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### B. ADEA Standard

Under the ADEA, it is unlawful for any employer to "discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). To allege that a termination violates the ADEA, an employee "must prove that age was the 'but-for' cause of the employer's adverse decision. *Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d. 658, 663 (S.D. Tex. 2013) (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009)). Proving that age was a "motivating factor" for the decision is not enough. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010) ("[T]he Supreme Court rejected the application of Title VII's 'motivating factor' standard to ADEA cases." (citing *Gross*, 557 US at 173–78). While but-for-cause does not mean sole cause, age must be the factor that makes the difference. *Straughan v. Vibra Rehab. Hosp. of El Paso, LLC*, No. EP-19-CV-241-KC, 2020 WL 10758973, at *9 (W.D. Tex. Nov. 29, 2020). Evidence of 'but-for' cause may be direct or circumstantial. *Gross*, 557 U.S. at 177–78).

In the Fifth Circuit, if an employee lacks direct evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 US 792, 802–05 (1973); *see also, e.g., Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 n. 15 (5th Cir. 2010) (recognizing that the Fifth Circuit has a history of applying the McDonnell Douglas framework to allocate the burden of production and the order of presenting proof in ADEA cases). Under the *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence must put forth a prima facie case of age discrimination. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). To establish a prima facie case of age discrimination, "a plaintiff must show that (1) he" suffered an adverse employment action, such as termination or discharge, "(2) he was qualified for the position; (3) he

5

was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Id.* (citing *Rachid v. Jack In the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (internal quotations and citations omitted); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575–76 (5th Cir.2003)).

If the plaintiff puts forward a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision." *Id.* If the employer then meets its burden, then it shifts back to the plaintiff to present substantial evidence that the employer's reason was a pretext for discrimination. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

### III. DISCUSSION

Nelson brings age discrimination claims against TxDOT under the Texas Labor Code and the ADEA. (Compl., Dkt. 1-2, at 5–6). In its motion for summary judgment, TxDOT argues that, assuming a prima facie case, (1) it has provided legitimate, nondiscriminatory reasons for Nelson's termination, and (2) Nelson has not submitted evidence that TxDOT's reasons were pretextual. (Mot. Summ. J., Dkt. 17, at 11–12, 15). Because age discrimination claims under the Texas Labor Code are analyzed through the same burden-shifting framework as ADEA claims, the Court will address both claims at the same time.

The Court finds that TxDOT has provided a nondiscriminatory reason for Nelson's termination. Under *McDonnell Douglass*, TxDOT's burden is simply one of production; presenting competent evidence is sufficient to shift the burden back to Nelson. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 US 133, 142 (2000). TxDOT presents copies of the complaints and incident reports against Nelson, (Dkt. 17-1, at 70–75), and copies of the investigation reports, (Reports, Dkt. 17-1, at

6

90–102). Based on these documents, TxDOT argues that Ragland terminated Nelson based on these reports. (Mot. Summ. J., Dkt. 17, at 15). Nelson objects to TxDOT's evidence, insisting it is inadmissible hearsay. (Resp., Dkt. 20, at 1). However, each of the exhibits is an original or an exact duplicate of records created by Diaz at or near the time of each occurrence, kept by him in the course of his regularly conducted business as Director of the Ethics and Employee Conduct Section, as he regularly did. Fed. R. Evid. 803(6). The records are admissible as records of a regularly conducted activity. *Id.* TxDOT has produced ample evidence suggesting a legitimate, non-discriminatory reason for the termination and has met its burden in that regard.

The Court further finds that Nelson has not raised a genuine issue of fact as to whether TxDOT's reasons were pretextual. Nelson denies that he engaged in any discriminatory acts. (Nelson Decl., Dkt. 20-1, at 1–2). But the accuracy or veracity of the complaints against him is not dispositive. "Employment law does not transform federal courts into human resources managers, so the inquiry is not whether an employer made a wise or even correct decision to terminate an employee." *Owens v. Circassia Pharma., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)). Even if the Court were to indiscriminately believe that Nelson's claims of innocence, "[h]e must, instead, produce evidence demonstrating that [Ragland] did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him on the basis of his age." *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165–66 (5th Cir. 1993).

Nelson has not produced any such evidence. His only evidence consists of his own declaration, which includes multiple instances of inadmissible hearsay, (Dkt. 20-1, at 1–2), and a string of unverified text messages between him and Ragland, (Dkt. 20-1, at 3–4), which TxDOT claims cannot be authenticated. Even if these exhibits were admissible, neither document raises a genuine issue of fact. At most, the Court could infer a dispute as to whether Nelson did engage in

7

discrimination and that Ragland was aware of the ongoing disciplinary proceeding against Dargahi, Sexton, and Smallwood, but not that Ragland impermissibly relied on the investigation results. Nelson's "subjective belief that his discharge was based on age is simply insufficient to establish an ADEA claim." *Id.* at 1164.

Because TxDOT has produced evidence of a legitimate basis for Nelson's termination, and Nelson has failed to produce any evidence to refute it, the Court finds that there is no genuine issue of fact and TxDOT is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that TxDOT's Motion for Summary Judgment, (Dkt. 17), is **GRANTED**. TxDOT is entitled to summary judgment as to all of Nelson's claims against them. Final judgment will be entered in a separate order.

**SIGNED** on April 4, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE